Good morning, Your Honor. May it please the Court. My name is Dean Paik, and I represent the defendant appellant, Chyra Reth, in this case. Counsel, I'd like to reserve three minutes for rebuttal. I imagine that the Court has had time to review and look at the brief, so I'll be very brief. In the time that I have, I wanted to address just two issues with the panel. First, the issue of what it is that Mr. Reth must establish in order to be entitled to relief from the government's failure to file a 3553E motion. And second, the issue of the language of the plea agreement as it relates to Mr. Reth's claim for breach of the agreement. On this first issue, the government has cited to Unite Wade, the Supreme Court case in Wade, and has maintained that in order to be entitled to any relief, Mr. Reth must have made a substantial showing of an impermissible government motive in denying or in failing to make the 3553E motion. We believe that's incorrect. That's simply wrong. This is not a Wade case. This is a Santabello case. And ---- Kagan. So let's assume that. We're talking about the plea agreement. Obviously, even if they didn't have to make the motion, they could bind their hands to make the motion if they agreed to do that in a plea agreement. So the question is, did they do that? Okay. Okay. Right. And so then on the second – so what Mr. Reth would have had to show was some evidence that the government had acted in bad faith, that plea agreements are, like most contracts and implied in the contract is a covenant of good faith and fair dealing. And in this case – and the case law is clear that that's also the case. The two Second Circuit cases that we cited, Leonard and Knights, and then also in this circuit, McCallion, which – in which the district court remanded the case for a hearing on whether or not the government acted in good faith, whether or not they acted in bad faith. Why are we talking about good or bad faith? Why can't it simply be whether they complied with the contract or didn't comply with the contract? Why isn't it just a breach of contract? Well, it's your position. I thought your position, unless it went over my head, your position is that you did comply because they filed an – they filed in solemn form a declaration that it's conceded that he fulfilled his obligation to cooperate. Yes, they did fulfill that portion of the – of the – Well, they filed that. Except – well, they did and they didn't. I mean, they said that he provided substantial assistance. But what they also said was that during debriefing sessions, he was untruthful. I know. But what they actually filed was that he was entitled to relief under one aspect of the plea agreement, but not under the statute. Under the 5K1, but not under – not under the statute. But they filed a declaration. Reading the declaration, I thought your position was that declaration ends the inquiry. They said he – he was – he cooperated and provided substantial assistance. No, the declaration didn't. The declaration – the government filed the declaration in support of their position that Mr. Reth had breached the plea agreement, that there was this anticipatory breach, and they weren't obligated to fulfill their part of it, and that the – that the – there were two separate aspects to what they obligated themselves to do. The first was to file a 5K motion allowing the Court to move out of the – the guideline sentencing range. The second was to file a 3553e motion in order to allow the Court to move below the mandatory minimum. They said – Is there a separate obligation for the government to move under section 3553 than for 5K1? Is there a separate obligation on your part which triggers their obligation to file? We're not asking hostile questions. You're reacting as if we are. So listen to what we're saying, okay? I'm sorry. The – there is a legal – legally, it is a separate motion. There – legally, there are two separate motions that must be filed. That's what the Melendez case says. 3553e requires a motion as well as 5K1.1. There are two separate motions. Your position, as I understood it, was that, yes, there has to be a – one doesn't encompass the other, but that the agreement was to file a single motion covering both of them. Precisely. And that that's the practice in the Northern District, as Judge Patel suggested. Precisely. So your – your argument, as I understand it, is that the agreement and the plea agreement was – was that while they could have filed one and not the other, without the plea agreement, with the plea agreement, if they filed one, they had to file the other. Is that your argument? Precisely. Well, it's a little bit different. It's not that they were going to file two motions. They were going to file a single motion encompassing both provisions, and – because the plea agreement language talks about a motion, not motions and a plea. Now, their response, as I understand it, is this, that actually, your client had – although 5K1.1 and 3553E both talk in terms of substantial assistance, and although they agree that he gave substantial assistance, he also made another commitment in this plea agreement, which was to cooperate fully and truthfully. And that he didn't do, they say. Right. And they, therefore, say, as I understand it, that the 5K1.1 motion actually wasn't made pursuant to this agreement. It was made out of the goodness of their heart. That's what they say. All right. Now, the question is, what's wrong with that? Well, first thing, the first thing that's wrong with it is there's nothing in the agreement itself that allows them to do that. The only thing the agreement talks about, Mr. Reth is cooperating pursuant to this agreement, and he fulfills his obligations under the agreement. You can only do this one thing. You can file a motion under both provisions. They're saying they had this power, but nowhere do they say where we got this power, that we kind of gratuitously, even though we obligated, even though we entered into this contract with you, Mr. Reth, we're going to move outside of the contract and we can willy-nilly do whatever we want. Well, their position is that although the agreement says and, then you would think that and means and, that it really is a disjunctive. It can mean and or. And then in the law, there's a lot of cases or statutes that when it says and, they've interpreted it as meaning and or, so we don't have to read it in the conjunctive. We could, the government says we could read it in the disjunctive, and you have to have two motions here. Well, the problem with that argument is the very next sentence, which says that motion, referring to the single motion, will allow two things to happen, not one thing to happen, which is that the guidelines, you can blow the guidelines and move under the guideline sentencing range. And the second is that you can sentence under the mandatory minimum. So your argument, that argument may have some weight if it weren't for the second sentence, but I think it's pretty clearly dispelled by the second sentence. But to go back to the other argument, it would be a very strange reading of a plea agreement with a defendant to say that if the government chooses to do something more favorable to the government, to the defendant than it's obligated to do, that the agreement precludes them from doing that. And that's what you're saying. But, well, the problem is they did not do something more favorable. I mean, that in a way is a, I think, a fallacy that they've set up, that we were not. But it's their position, because they're saying, as I understand it, that, and it seems, I'm having a hard time seeing why it isn't right, that he didn't, that the obligation in this agreement really went beyond the statutory obligation. In other words, the statute doesn't, neither the statute nor 5K1.1 talks about truthfulness, as I, in, right? But this thing does. So they, therefore, say the agreement wasn't complied with, but the statute may have been. But at that point, we're outside the agreement, but we are going to make a motion that we are not obligated to make under the agreement, but that we are allowed to make under the, the guidelines provision. Well, I, but I think that any time, I mean, that's one way to look at it, but I think that any time the government wanted to get outside the scope of an agreement that obligated to do them, have them do something they did not want to do, they would just do that. They would say, well, why? Only if you didn't fulfill your obligation. If you had, if he had cooperated fully and truthfully, then, then they couldn't have done that. Well, I think, well, and to that point, I would say that nobody's ever established that he didn't fulfill his obligation. The Court never made any findings about that to this day. Is it your position that he had a different obligation under 5k-1 than he had under 35-53? No. It was the same obligation. And if they said he fulfilled his 5k-1, ipso facto, he fulfilled the 35-53. Right. That's your, that's your bottom line. Well, it's part of it. But, but the, but the other, the other thing I was going to add. If that is so, if that is so, then this wouldn't be, if you are correct, this would not be a remand. This would be a, as a matter of law, a, a instruction to the district court to require the government to fulfill the obligation. That's right. But on your other. You were at some points were asking for an evidentiary hearing, right? Were you asking for an evidentiary hearing at various points? I'm sorry? But. In this case, no. In this case, right. But can I just address one other point about your. Sure, go ahead. The other thing about what you're, you were saying about moving outside the scope of a, of an agreement and kind of being able to, in effect, decide what you're going to do, whether. But only if the, if, only if the, if the, if the defendant first hasn't fulfilled his obligations. Obviously, if you've fulfilled your obligation, if your client hasn't fulfilled his obligation, they couldn't do that. But it's arbitrary. It's very arbitrary to say we're going to enforce this provision in this instance. We're not going to enforce it in. But that's the way the world works outside an agreement. And the real question is, is there some rule that says once there is an agreement, they can't do anything that they don't have to do just because they choose to do it. And I would say that. That's favorable to your defendant, to your client. Well, first, I would say it wasn't favorable for a number of reasons because. Wasn't favorable to, to make the 5 claim 1.1 versus not making it? It was not. Why is that? They asked for a guideline range that was higher than the. 60 months. So we got a higher sentence than he would have gotten otherwise. And you came off first off, no question about it. The, the probation officer recommended a guideline range of 200, a sentence, guideline sentence of 210 months. The United States Attorney's Office, after giving Mr. Reth the quote, unquote, benefit of his cooperation, recommended a sentence of 228 months. Now, there is no benefit there. I mean, if you have friends like that, you don't really need enemies. I think I should. Well, let me just answer a question that the judge asked you, which I don't think you responded to. It seems that the way I read your argument here and your best position would be that we have to remand this for the district court to enforce this by its terms. But yet, you, you've argued in your brief that this requires a remand for an evidentiary hearing. What is, what is your position here? It's an alternative. If, if I think you can, certainly I'd be more happy if you would just. Oh, I know that, but I just want to, that's sufficient. You're clear enough for me. All right. And also, it's sort of hard to figure out what an evidentiary hearing would do, because as I read this agreement, it says, if in its sole and exclusive judgment it decides to have cooperated fully and truthfully, then they will file a motion. So the, the, the, actually the sole and exclusive judgment doesn't go to whether they file the motion. It goes to whether they decided that you've cooperated fully and truthfully, which is both good and bad for you, because it means that once they decided that you've met the condition, they don't have an obligation. They don't have discretion anymore. But I don't understand what, how you can have an evidentiary hearing on the question of whether you cooperated fully and truthfully when this thing says that that is in their sole and exclusive judgment. Because in the case law that we cited, even where there's language in a plea agreement that says sole and exclusive judgment, the court is required to look into whether or not the government is acting in good faith or bad faith. Right. Good faith or bad faith. Oh, you had a very high standard at that point. No. What the government did was it presented us with an affidavit from the then-assisting United States attorney who was prosecuting the case, who said in a, in a conclusory fashion that Mr. Reth lied and these are the points. Mr. Reth disputed that by testifying, I did not lie. I told the truth at all times. There were a number of issues. This was an extremely large case. Mr. Reth was debriefed by either State or Federal law enforcements on 13 occasions for several hours, in fact, in many after, many, many afternoons. He, he admitted to directly orchestrating and participating dozens of armed, takeover robberies of computer equipment companies. And he, throughout these many, many debriefings, the government never raised the possibility that Mr. Reth had been untruthful. It was only seven years later in 2006 that they first raised that he had been untruthful. They, they interviewed him on hundreds of topics. And what they were saying was, on two very isolated topics, one was his participation in a single armed computer chip company robbery, a single one, even though he had admitted to participation in dozens of them, or a dozen, over a dozen, I should say, and then second on this topic of whether or not he had skimmed computer parts from other co-conspirators in the case, rather than, you know, putting them, giving them to, to the leaders of the organization. On these two very isolated, very --- I think we, we, we understand, Your Honor, that regret. I understand. Okay. Thank you very much, Mr. Petty. I appreciate your argument. Counsel. Good morning, and may it please the Court. Counsel, I'm going to jump in here while I have a chance. And I look at this as a breach of contract case, this speaking personally. You said, the government believes defendant has substantially fulfilled his obligations to the government, as in, and is entitled to a sentence reduction pursuant to sentencing guideline section 5K1.1. How can you now claim that that condition was not met? How can you claim it was met with respect to 5K1.1, but not with respect to 3553E, when you had agreed to make a single motion? The, that statement refers to the fact that the defendant had provided substantial assistance, and that condition certainly was met, and that gave the government the discretion, although not the, the obligation, to file a motion under either 5K1.1 or 3553E. Why did they give it discretion as opposed to imposing an obligation to follow the plea agreement? Because the provision of the plea agreement that the defense is relying upon was never triggered. There is a confusion in the defense's argument between the condition that triggers the ability of the government to bring a motion under either section, which is substantial assistance, with the condition that would have been necessary to bring subparagraph 14C into effect, which was a discretionary governmental determination that not only substantial assistance had occurred, but also that there had been full and truthful cooperation and that the defense had otherwise complied with the plea agreement. By bringing the, the 5K1.1 motion, the government was, was very clear that it was, it was acknowledging that substantial assistance had been given. The defendant had provided truthful information with regard to the roles of other people in this criminal enterprise, but not that the defendant had been fully and truthfully cooperative and he had lied with regard to two specific instances of his own. Could, could the government, under those circumstances and that understanding of the agreement, have not made the 5K1.1 motion? Absolutely. And the irony here is that the government appears to be being punished or is being held against it by the defendant. But what about the argument that by making the 5K, one would assume that the government is bound by the agreement at least not to do anything that's going to put the defendant in a worse position than if they complied with the agreement. So if they put them in a worse position by making a 5K1.1 motion, do they still have a right to do it? Well, and it's very clear that the defendant did receive a benefit. Well, first answer, suppose, suppose it was worse for him. Did they have a right to do that? If the government had acted You made an agreement about the circumstances in which you're going to make a 5K1.1 motion. Certainly. And then, I mean, this is very abstract now, but one would think that you couldn't then go ahead and make it under some other circumstance, at least if it's going to be worse for the defendant. Right. And I think there could be an argument that the government would be acting in bad faith if it's not to punish the defendant through a departure motion. I find it hard to imagine such a circumstance. All right. So what about the contention, then, that given everything, it actually ended up worse off rather than better off for the defendant if the government made this motion? By virtue of a 16-month sentence on the firearms issue, which would not have been given him, had the government complied with his agreement. Well, the government did comply with its agreement. I understand that's your position. Right. The contention that the defendant was worsened, was made worse off by the 5K1.1 motion is not supportable. The ---- Well, the sentence supports that. No. But the ---- had the government not made the 5K1.1 motion, the Court would have been even more limited in its discretion than it ought to. But you made it. You made it. So and as was discussed, by making it, you made him worse off than if you had done nothing. No, that's not true. The probation office's recommendation was for a 270-month sentence, not a 210-month sentence. That 210 months did not include, as the probation office explicitly said in its report, the 60-month consecutive sentence on the 924C count. The government ---- the Court would not have been able to impose the sentence it did impose, which was 240 months, but effectively a 256-month sentence without the downward departure motion. The existence of the downward departure motion, keep in mind, the government was already making the lowest possible sentencing recommendation the plea agreement entitled it to make. By bringing the 5K1.1 motion, that empowered the district court to depart up to 32 months below that recommendation, which both parties had agreed would be the lowest, even if the defendant had fully complied with all the terms of the plea agreement, which he had not done. So the Court would not have had that discretion had the 5K1.1 motion not been brought. That's what enabled it to go below the limit. Let's go back to basics. This agreement says and, and it contemplates one motion. It did. And had the defendant believed it, had the government confirmed it. No, no, no, no. You're only allowed to file one motion under this plea agreement. If the conditions for that provision are met. Well, you have an obligation to file no motion or one motion. No, that's not correct, Your Honor. Well, you drew the agreement, and you can tell by the repartee here that in my dim mind, at least, I speak for myself only, that it is rather confusing as to exactly what his obligation was and what your obligation was if he gave substantial assistance. And with certain respect, I don't think the first seconds of the provision we're discussing, which is subparagraph 14C, can be confusing. All of the language that's been ---- The agreement says you were going to file one motion. It says and. You can't read that as and or. You can't read that as saying you're going to file one motion for half of the plea agreement and not for at all. And we're not reading it like that. Well, yeah, but that's the problem. It says you're going to file one motion. One motion you did file. And his position seems to have a lot of weight to it that you weren't ---- if you filed a motion, you had to file it for both aspects, the statute as well as for the guideline. I understand what the Court is saying on that, of course, because that position does not have weight to it because that provision of the agreement was not triggered. We certainly would have been obligated under that language to file one motion under both if we had determined in our sole and exclusive judgment that the defendant had complied with three conditions. We determined that he had not complied with those three conditions. Where in this agreement does it say that you could file for one but not for the 3553? You drew the agreement. He didn't draw it, right? He agreed to it. He did not draft it. All right. That's what I said. You drew it. So it is a contract of adhesion at the very least. Well, I think you can tell from the handwritten comments on the plea agreement that there was back and forth and there was editing by both parties of this agreement. So I don't think it's fair to characterize the government as a sole drafter. But I do agree in the case of this case that ambiguity should be construed against the government. Here the agreement has a provision, if certain, if A, B, and C, then D. If certain conditions are met, the government will bring both of these motions. And would you agree that the agreement, excuse me, would you agree that, fairly read, the agreement provides for only one motion? If those conditions are met, it provides that both of those would be brought in a single motion. That's absolutely right. Where does it provide that you could provide, that you could file a motion for one, but not for the 3553? Well, the agreement is silent as to what will happen if those conditions are not met. But it certainly does nothing to remove the discretion that the government always has to do something favorable to the defendant if substantial assistance is provided. There's no language one way or the other. It certainly doesn't say if these conditions are not met, the government is still bound by these conditions, which would apply if they were met. That would be what the defense would have to do. Do you agree with the representation of the legal background on the sole and exclusive judgment? That is, they cooperated fully and truthfully. You have some reasons why you say he didn't. Is that subject to examination by a court at all? It's only subject to examination if there is some substantial showing that that determination was not honestly made by the government. If the government had acted in bad faith, out of unconstitutional motivation, and there was some cognizable and supported allegation of that. Well, if there were no basis for it, one could infer a bad faith, couldn't one? If it were arbitrary. Well, to get a hearing on the matter, there would have to be a showing of that. I think the claim is that there was his contention is that the only person who made the skimming allegation was a co-defendant who didn't like him and should have believed him. And the second is that he didn't lie with regard to this other thing, and why would he have? Right. And in that respect, this case is directly parallel to the Wade decision. In that case, as here, the defense was upset about the fact that it had not received the downward departure motion. In that case, as here, the district court explicitly invited the defense to detail what type of evidence it would bring forth in a hearing on that matter and what the allegation was. In that case, as here, the defendant then did not raise any evidence or describe any kind of inquiry that would bear upon the good faith nature, the honesty. So you think there was just a procedural problem? The defendant, if he filed a declaration that said, I didn't say this and I didn't do this, that would have been different? Well, if he had raised an allegation of bad faith, which he was very clear below he was not doing, and the government, and he had supported that with a showing. I mean, at least at one point, the statement is made slightly fortuitously, perhaps, that the U.S. attorney had changed. And the real suggestion was that the administration had changed who was running the case, and they had a different view of things. I mean, that was the suggestion. And I would refer, Your Honor, to, I think, pages 11 and 31 of the supplemental record. He's quite clear that he doesn't know what was motivating the government, that he can't speculate on it, and he has to assume the government was doing the right thing. His disagreement and his description of what he would have an evidentiary hearing on had to do with the extent of his client's truthfulness and, as Your Honor was suggesting, the extent to which the government had properly weighed what his client had said as to what other, against what other cooperators had said and made a determination about his existence. Well, he says the government has stopped to argue that the modicum of untruthfulness, if it be so, disqualifies him for the purpose of sentence reduction, because it admitted in a motion for downward departure that Ruth had substantially fulfilled his obligation to the government and was entitled to a sentence reduction. This is what you said in the motion. And that's entitled, meaning deserving. It's not that the government was under an obligation to bring that, but the government felt it was appropriate. Not along with the agreement which says you're going to only have, you're going to file one motion directed both to the 5k1 and to the 3553, together with the fact that if it is ambiguous, I would have construed against the government, frankly, I'll tell you. Why shouldn't we direct that this be, you're enjoined to not to honor it? Because that vision of the plea agreement never came into effect. The triggering condition for that language to be binding on the government was for the government to be required to file a single motion encompassing both sections, which we certainly would have been obligated to do had we determined, as this, as the paragraph clearly sets forth. The problem is that the agreement does not say that you would have the obligation to file two motions or in your discretion to file one motion for the statute and one for the guidelines. It doesn't say anything like that there. We would have been obligated to file both motions had that. There's nothing in the agreement which says it contemplates filing one motion only for the guideline or the statute. There's nothing, you've got to conceive that. I'm sorry, may I interrupt? We would have been obligated to file a single motion containing both, with both provisions. And then where in the contract that you had with him allows you to file one motion for the guideline but not for the statute? The plea agreement is utterly silent on what the government's obligations will be if the defendant does not comply with his obligations under the plea agreement. We had the discretion, as we always, it did not remove the government's statutory discretion under either 5K1.1 or 3553E to be able to file. Is there a case law about that? I mean, we're all, you're assuming that and I'm somewhat assuming that, but I'm, it's not plain to me that you don't read an agreement like this as wrapping up all the obligations of both sides, such that the government has to act pursuant to the agreement or not at all. I don't think the defense is arguing, or would want to argue, that the government was unable to do things that they do want to. And I'm curious to know what your authority is for the proposition that the government can act, because you see, in this instance, it's a good example of the fact that, you know, whether it was favorable or not favorable is at least questionable and we'd have to get into the, to an inquiry as to whether this was good or bad for the defendant. So the question is really, do we read these agreements as simply wrapping up all the obligations of both sides such that you can't go outside the agreement? And I can speak to whether it was favorable or unfavorable. Is there any case law about that? Yes. Price decision, other cases in the circuit, and Wade, I think if you read Wade in conjunction with McCallion as well, the only difference that a plea agreement makes On my question, which is, can you go outside the agreement? The answer to your question is, the only difference that a plea agreement makes to the entire arena of what the government can and can't do under 3553 and 521.1 is that it is possible for the government to bargain away some of its discretion. The plea agreement can bring an additional constraint on the government's discretion under that if that's what it's negotiated for. Here, it did not in the respect that the defense is suggesting. Certainly, the government could have bargained away its discretion to bring 5K1.1 motions and 3553e motions, and it did in the sense that And you don't think it would be sensible to read this, see, as simply describing the circumstances in which the government will bring a 5K1.1 motion, and that's it. I mean, you I think it's objectionable to read it as to describe a set of circumstances under which the government would be obligated to bring those motions. That's what it did. And also, I don't think we should, despite the sight of the fact, the defendant did receive, despite his protestations, and I understand why he's making them, a very generous deal under this plea agreement. He was already serving a 196-month state sentence for a single outbreak. The obligation was only for 24 years, and he basically got less than that. I understand that. Okay. Thank you, counsel. You've gone over your time. Very useful argument. Thank you. Yes, counsel. We'll give you another two minutes because we gave him four over. Go ahead. I did want to address one point, which is this question of benefit for Mr. Rett. Counsel was comparing apples and oranges. The 210-month sentence recommended by the probation office was without the addition of the 60-months consecutive. The 228-month sentence recommended by the government was without the 60-month consecutive sentence. The total sentences would be 270 and 280. And it was still better off with the 5K, 1.1, than without it. We were better off without the 5K than with it. No, but because the 5K, 1.1 was made, the district court had more authority. I mean, another thing that swims through my head about all this is after Booker, what difference does the 5K, 1.1 make anyway? And were they really giving you anything because the judge could have done the same thing without them doing it? As I understand it. Which maybe is why there's no benefit. But because after Booker, I don't understand. And after Mahabat and his circuit, the whole departure system is sort of out the window anyway, and the 5K, 1.1 motion doesn't appear to matter, although the 3553E motion would have mattered. Right. Exactly. That's the nub of it. The 3553E was the motion, because he is serving 196 months under the state. So if you run the 60 behind the 196, it's over 21 years. And that is more time than the district court wanted to sentence him. There were two separate sentencing hearings here. I understand she wanted 20 years. So she wanted to give him 20 years, but she was not able to. She was constrained by the government. Thank you very much. I thank both counsel for a very useful argument in an interesting little case. United States v. Brett is submitted. We will go on to Andrews v. Cervantes.
judges: D.W. Nelson, Cowen, Berzon